## APPEAL OF J. C. EVES.

Docket No. 1669.    Submitted April 21, 1925.    Decided June 23, 1925.

Upon the evidence submitted, *held:*
(1) That amounts expended in replacing cans, tubs, and cabinets which have a useful life of three years are capital expenditures and not deductible as ordinary and necessary expenses.
(2) That a depreciation rate of 20 per cent should be allowed on machinery and equipment instead of a 10 per cent rate, as allowed by the Commissioner.
(3) That the depreciation rates of 33⅓ per cent on auto trucks and shipping equipment, 4 per cent on buildings, and 10 per cent on office fixtures, allowed by the Commissioner, are reasonable.

*Alex. M. Hamburg, Esq.,* for the taxpayer.
*W. Frank Gibbs, Esq.,* for the Commissioner.

### Before IVINS, MARQUETTE, and MORRIS.

This appeal is from a determination by the Commissioner of a deficiency in income tax for the years 1920 and 1921 in the amount of $1,726.47. The appeal was submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is an individual residing at Barnesboro, Pa. From the year 1910 to March 31, 1920, he was an employee of the W. E.

Hoffman Co., which was engaged in the manufacture of ice cream at Barnesboro, and served as manager of its plant. On April 1, 1920, he formed a partnership with Miss L. M. Jepson. The partnership purchased the plant of the W. E. Hoffman Co., and thereafter operated it under the firm name of Hoffman Ice Cream Co., until the death of Miss Jepson on November 1, 1921. The taxpayer then took over the business of the partnership at its book value and continued to operate it during the months of November and December, 1921. The taxpayer had a two-thirds interest in the partnership and devoted all of his time to managing its business.

The buildings which constituted the partnership's plant were two in number and they were both built in the year 1912, entirely of brick. One of these buildings was used as a garage and the other as an ice cream factory. In this building there was installed machinery necessary to manufacture ice cream and ice. The plant was operated on an all-year basis, but the amount of ice cream manufactured in the months of April to September, inclusive, was much greater than in the other months, and during that period the plant was run 24 hours each day. The machinery was all electrically driven and most of it rapid moving. Some machinery was discarded in 1919 and 1920, which was installed in 1917, while other machinery installed in 1919 and 1920 is still being used, although its useful life is almost over.

Deliveries of ice cream were made by auto truck over dirt roads. The hauls were from 20 to 50 miles. The trucks were in operation from 7 o'clock a. m. until 6 or 7 o'clock p. m. each day from April to September. In addition to the ordinary depreciation occurring on account of constant use, the salt water used in manufacturing and packing ice cream rusted and damaged the springs and other metal parts of the trucks. The partnership usually traded some of its trucks in each year. At the date of the hearing of this appeal only one of the six trucks then in use was over three years old. Of the five other trucks, none was over two years old.

On account of long, rough hauls, rough handling, the effect of salt water, and numerous thefts, it was necessary for the partnership to replace ice cream cans, tubs, and cabinets about every three years. The cost of the replacements was charged to expense. The partnership also purchased in the year 1921 additional transformers for increasing production, and charged the cost thereof, $1,108.47, to expense. The amount spent for ice cream cans, tubs, and cabinets was $2,613.95 in 1920 and $743.86 in 1921.

The Commissioner allowed the following depreciation rates on the various assets:

|                         | Per cent          |
| ----------------------- | ----------------- |
| Brick buildings         | 4                 |
| Machinery and equipment | 10                |
| Shipping equipment      | 33⅓               |
| Auto trucks             | 33⅓               |
| Office fixtures          | 10                |

The partnership filed an income-tax return for the period April 1 to December 31, 1920, and reported a net income of $16,063.88. The Commissioner disallowed, as a deduction from gross income, the amount of $2,613.95, expended in that year for ice cream cans, tubs, and cabinets, and reduced the partnership allowance for exhaustion, wear and tear of its plant and equipment by $6,592.68, thus increasing the net income of the partnership from $16,063.88 to $25,270.51.

For the period January 1 to October 30, 1921, the partnership reported a net income of $14,819.17. The Commissioner disallowed, as a deduction from gross income, the amount of $1,108.47 expended for transformers, and $743.86, expended for ice cream cans, tubs, and cabinets, and charged to expense, and reduced the partnership allowance for exhaustion, wear and tear of its plant and equipment by $4,100.25, thus increasing the partnership income to $20,771.75.

The Commissioner, upon audit of the taxpayer's income-tax return for the years 1920 and 1921, increased his net income for the year 1920 by the amount of $6,137.77, and for the year 1921 by $3,968.38, on account of his distributable share of the income of the partnership for those years, and reduced by the amount of $810.04 the taxpayer's deduction for exhaustion, wear and tear of the ice cream plant and equipment. He also made certain other adjustments which are not in dispute and which are not material here and determined that there is a deficiency in tax in the amount of $1,038.71 for 1920 and $687.76 for 1921, making a total deficiency of $1,726.47. The deficiency letter was mailed to the taxpayer November 26, 1924. The petition herein was filed January 24, 1925.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

Morris: The taxpayer contends that the cost of certain ice cream cans, tubs, and cabinets, purchased during the years 1920 and 1921 by the Hoffman Ice Cream Co., was an ordinary and necessary business expense and deductible from gross income, and that the

partnership, on account of abnormal conditions, should be permitted, in computing its deductions for exhaustion, wear and tear of the property used in its business, to use a higher rate than that used by the Commissioner. He also alleges that the Commissioner has failed to make an adequate allowance for salaries in determining the net income of the partnership. However, the record discloses that the Commissioner has allowed the same salaries claimed by the partnership in its return for the years involved herein, and the taxpayer has introduced no evidence to show that the allowance for that purpose should be increased.

The ice cream cans, tubs, and cabinets purchased by the partnership from the W. E. Hoffman Co. were a part of the partnership capital assets. The purchases of new cans, tubs, and cabinets involved herein were made for the purpose of replacing the original cans, tubs, and cabinets as they became exhausted. These assets were thus maintained at a certain standard at all times. Section 215 (c) of the Revenue Act of 1918 and section 215 (a) (3) of the Revenue Act of 1921 provide that no deduction shall be allowed in respect to "any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made." The partnership has claimed and has been allowed a deduction for depreciation of the cans, tubs, and cabinets used in its business, and it should not be permitted to charge the replacement cost thereof to expense and deduct the same from gross income. The cost of these replacements was, we think, clearly a capital expenditure. The amount spent by the partnership for cans, tubs, and cabinets during the period of April 1, 1920, to November 1, 1921, should therefore be capitalized and depreciated over their life.

We are satisfied from the evidence that the machinery and equipment used by the partnership had a useful life of five years, and that the deduction for depreciation on those assets should be computed on that basis. It is our opinion that the auto trucks and shipping equipment had a useful life of three years, and that the depreciation rate of 33⅓ per cent used by the Commissioner is therefore reasonable. The evidence fails to establish that depreciation of buildings and office fixtures occurred at a greater rate than that determined by the Commissioner and the allowance made by him for that purpose is approved.

The taxpayer took over the assets of the partnership on November 1, 1921, and continued to operate the business during the remainder of the calendar year. The rates of depreciation herein approved as to the partnership should be used in computing the taxpayer's allowance for depreciation of the assets acquired from the partnership.